```
                IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF VIRGINIA

                            Alexandria Division


UNITED STATES OF AMERICA,      )
                               )
                               )
     Plaintiff,                )
                               )
                               )
          v.                   )    1:13cv146 (JCC/JFA)
                               )
                               )
$17,550 UNITED STATES          )
CURRENCY,                      )
                               )
                               )
     Defendant.                )
```

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Claimant Mandrel Lamont Stuart's ("Claimant") "Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Supplemental Rule G(2)" ("Motion"). [Dkt. 6.] For the following reasons, the Court will deny Claimant's Motion.

### I. Background

#### A. Factual Background

This case arises out of the seizure of $17,550 by officers of the Fairfax County, Virginia Police Highway Interdiction Team in August 12, 2012 from Claimant's vehicle

1

during a traffic stop of Claimant on interstate 66 ("I-66") in Fairfax County.

On August 22, 2012, the officers saw the vehicle driven by Claimant traveling on I-66 with heavily tinted windows, Florida license plates, a medium crack in the windshield directly in line of sight of the driver, and a DVD video screen flipped up with a movie paying and visible to the driver. (Compl. [Dkt. 1] ¶ 7.) During the subsequent traffic stop, Claimant told an officer that he owned a restaurant in Staunton, Virginia, as well as a house in Florida and two other restaurants in the D.C. area. He stated that he and his passenger, whom he described as his girlfriend of a year, were traveling to D.C. to check on those other two restaurants. (*Id.* ¶ 8.) His passenger, however, stated that she had been dating Claimant for only a month, that they were traveling to the Richmond/D.C. area to go shopping and to get something to eat, and that she was unaware of the restaurants which Claimant stated he owned and allegedly was going to visit. (*Id.* ¶ 9.)

After a K-9 police officer arrived at the scene, a trained drug dog positively alerted on the front bumper and left rear wheel area of the vehicle. (*Id.* ¶ 10.) The officers located a black folding knife on Claimant during a pat-down of him and his passenger. (*Id.* ¶ 11.) A search of the vehicle revealed that none of the four windows would roll down, the dash

and interior trim was suspiciously loose, and there was a yellow straw with unknown residue in the CD changer in the center console and a backpack behind the driver's seat containing DVDs and a residue suspected to be marijuana flakes which field-tested positive for THC, the active chemical in marijuana. (*Id.* ¶ 12.) On top of the left rear wheel well hump, the officers found a black laptop bag inside of which was a paper bag containing large bundles of currency. (*Id.* ¶ 13.)

After the officers issued Claimant a summons for the DVD screen violation and he voluntarily accompanied them to the Fairfax County Police Sully Station, another trained drug dog positively alerted to the bags containing the currency and the suspected marijuana flakes. (*Id.* ¶ 14.) The currency in the laptop bag totaled $17,550. (*Id.* ¶ 15.) While at the station, Claimant stated that he instead was traveling to a restaurant wholesaler in D.C. to pick up supplies for his Staunton restaurant and claimed to have been to the wholesaler approximately 30 times previously, but did not have a list of needed supplies nor knew the wholesaler's name, phone number, address, or directions to get to the wholesaler. (*Id.* ¶ 16.) Claimant did not have a business card or check book for his businesses and stated that this was because the "tax man" had shut down his accounts for tax evasion. (*Id.*) With Claimant's consent, officers reviewed his cell phone and found text messages

3

indicative of drug transactions. (*Id.* ¶ 17.) Claimant has no reported wages or earnings according to a search of Virginia employment records. (*Id.* ¶ 18.) Claimant has a record of drug convictions and numerous arrests for drugs and weapons charges. (*Id.* ¶ 19.)

B. Procedural Background

The Government filed its Verified Complaint *in rem* for civil forfeiture of the defendant currency on February 1, 2013. [Dkt. 1.] On March 4, 2013, Claimant submitted a Claim for the seized defendant currency. [Dkt. 4.] On March 25, 2013, Claimant filed his Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Supplemental Rule G(2) and accompanying memorandum. [Dkts. 6-7.] The Government filed its opposition on March 28, 2013 [Dkt. 9], and Claimant replied on April 1, 2013 [Dkt. 10].

Claimant's Motion is now before the Court.

## II. Analysis

Under 21 U.S.C. § 881(a)(6), all currency furnished or intended to be furnished in exchange for illegal drugs, all proceeds traceable to such an exchange, and all currency used or intended to be used to facilitate illegal drug trafficking are subject to forfeiture. Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims and 18 U.S.C. § 983 provide the rules governing civil forfeiture proceedings.

Under the Civil Asset Forfeiture Reform Act ("CAFRA"), in forfeiture actions brought under 18 U.S.C. § 983, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). To do so, the Government "may use evidence gathered after the filing of a complaint." 18 U.S.C. § 983(c)(2).

To determine the sufficiency of a civil forfeiture complaint, the court looks to whether the complaint satisfies the requirements of Supplemental Rule G(2)(f), which requires the complaint to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. Rule G(2)(f); *see* Supp. Rule G(8)(b) (noting the "sufficiency of the complaint is governed by Rule G(2)" and that "the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property"). Supplemental Rule G(2)(f) carries forward the standard for determining the sufficiency of a civil forfeiture complaint set forth in *United States v. Mondragon*, 313 F.3d 862, 865-66 (4th Cir. 2002), which held that such a complaint need only allege "facts sufficient to support a reasonable belief that the property is subject to forfeiture." *See United States v. $79,650 Seized from Bank of America account ending in -8247, in*

5

*name of Afework*, No. 1:08cv1233 (JCC), 2009 WL 331294, at *2 (E.D. Va. Feb. 9, 2009); *United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1, 15-17 (D.D.C. 2008) (citing, *inter alia*, the Advisory Committee Note on the 2006 Adoption of Supp. Rule G).

Upon reviewing the facts, the Court finds that the Government has stated facts sufficient to support a reasonable belief that the defendant currency is subject to forfeiture due to its connection to drug trafficking. In this case, the Complaint alleges that a substantial amount of cash was found in unusual packaging (in bundles in a paper bag inside a laptop bag). (Compl. ¶ 13.) The mere "presence of that much cash, oddly packaged, could raise a suspicion that someone was up to no good, but without more it does not suggest a connection to drug trafficking." *Mondragon*, 313 F.3d at 866. As in *Mondragon*, however, the Complaint provides additional key allegations. The defendant currency also was found in an unusual location (on top of the left rear wheel well hump). (Compl. ¶ 13.) A drug dog alerted to the vehicle area in which the cash was located, the left rear wheel area, as well as alerted directly to the bag containing the currency itself. (*Id.* ¶ 10, 14.) Suspected drug residue also was found in the car, including a backpack containing suspected marijuana flakes (which field-tested positive for THC and to which a drug dog alerted positively) and

a yellow straw with unknown residue in the CD changer in the car's center console. (*Id.* ¶ 12, 14.) In addition, none of the four windows would roll down and the dash and interior trim of the vehicle was suspiciously loose, suggesting that drugs had been or could be stored in the vehicle's doors. (*Id.* ¶ 12.) The vehicle's Florida license plates and Claimant's assertion that he had a home in Florida and was traveling up to the D.C. area suggest that Claimant was coming from Florida, a source state for drugs. (*Id.* ¶ 7-8.)

Moreover, Claimant's explanation of his travel's purpose, his employment, and his relationship with his passenger was discredited by his passenger's contradictory statements and by the absence of any Virginia employment records for him, and Claimant later changed his explanation to a story with significant and suspicious gaps in critical details. (*Id.* 8-9, 16, 18.) Finally, the Complaint alleges that text messages indicative of drug transactions were found on Claimant's cell phone and that Claimant has a criminal history of involvement with drugs. (*Id.* 17, 19.)

As a result, the totality of the factual circumstances alleged supports a reasonable belief that drugs had been transported by Claimant in his vehicle and that the currency found in that vehicle was linked to drug trafficking. *See Mondragon*, 313 F.3d at 866. The Government's Complaint,

7

therefore, has met the particularly requirement set out in Supplemental Rule G.

### III.  Conclusion

For the foregoing reasons, the Court will deny Claimant's Motion.

An appropriate Order will issue.

|  |  |
|---|---|
| April 17, 2013<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |